UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

  Plaintiff,

v.          Case No. 09-20127

Alex Johnson,       Honorable Sean F. Cox

  Defendant.

_____/

## OPINION & ORDER
## PRECLUDING NECESSITY DEFENSE

  In this action, Defendant Alex Johnson ("Defendant" or "Johnson") is charged with being a felon in possession of a firearm.  This matter is currently before the Court on Johnson's Motion in Limine, wherein he asks this Court to make pretrial rulings as to whether the Court will permit him to present evidence supporting a necessity defense and whether the Court will give jury instructions regarding same.  Johnson also asks the Court to make pretrial rulings on two other evidentiary issues that may arise at trial.  After briefing by the parties, the Court held an evidentiary hearing on February 2, 2010, and also heard oral argument by the parties.

  For the reasons set forth below, the Court shall DENY Johnson's motion with respect to his requests relating to a necessity defense.  The Court concludes that Johnson has failed to establish a prima facie case of necessity pursuant to the five-factor test set forth in *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990).  Accordingly, the Court concludes that Johnson is not entitled to a jury instruction on the defense of necessity and the Court shall preclude

1

Johnson from introducing testimony or evidence at trial regarding a necessity defense.  The

Court shall take the remaining evidentiary issues under advisement.

BACKGROUND

The indictment in this action charges Johnson with one count of being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (Docket Entry No. 3).  He is

charged with knowingly possessing a "Ruger, .40 caliber, semi-automatic pistol" on October 10,

2008.  (*Id.*).

On January 26, 2009, Johnson filed his Motion in Limine and the Government filed its

response on January 29, 2010.

The Court held an evidentiary hearing on February 2, 2010.  As indicated on the record,

the parties stipulated to the following facts, for purposes of this motion:

1.  On May 15, 2008, an individual named Melvin Napier ("Napier") was
    killed at the 1400 block of Woodhall Drive in Flint, Michigan.

2.  On August 13, 2008, an individual named James Fuller ("Fuller") was
    shot in the neck while inside of a vehicle at the intersection of Warrington
    Drive and Canniff Street in Flint, Michigan.  Johnson drove Fuller to the
    hospital after he was shot.

3.  On October 8, 2008, an individual named Demonte Counts ("Counts")
    was killed at the intersection of Fleming Road and Canniff Street in Flint,
    Michigan at approximately 6:00 p.m.

4.  On October 10, 2008, Johnson and an unidentified individual shot at each
    other at the intersection of Fleming Road and Pierson Road in Flint,
    Michigan, at approximately 1:00 p.m.

Johnson's version of the events, as set forth in his testimony at the February 2, 2010

evidentiary hearing, is as follows.

Johnson's date of birth is August 11, 1984.  Johnson was convicted of receiving and

concealing stolen property in 2002.  Johnson stipulates that he had a felony conviction prior to October 10, 2008.

The events at issue occurred in a discrete area of Flint, Michigan that is depicted on the Government's Exhibit 9.  (Attached as Ex. 1 to this Opinion & Order).[1]  Johnson testified that, during the events at issue, there were ongoing problems between individuals from two rival neighborhoods: 1) the "Selby Neighborhood;"and 2) the "Woodhall Neighborhood."  These two neighborhoods are located South of Pierson Road and are divided by Fleming Road.  The Selby Neighborhood is located West of Fleming Road, while the Woodhall Neighborhood is located East of Fleming Road.  Some individuals from the Woodhall Neighborhood were in the "Woodhall Gang" and some individuals from the Selby Neighborhood were in the "Selby Hood Gang."  Although Johnson is from the Selby Neighborhood, he testified that he is not a part of the Selby Hood Gang.

Johnson was not present when Napier was killed on May 15, 2008, but he was aware of his death.  Napier was from the Selby Neighborhood.  Johnson testified that he did not believe that his life was in danger after Napier was killed.

Approximately one week after Napier's death, however, Johnson went into the Woodhall Neighborhood.  While Johnson was in the Woodhall Neighborhood, a man wearing a mask starting shooting at Johnson's vehicle, which at that time was a Thunderbird.  No one else was in the Thunderbird with Johnson.  Johnson testified that he jumped out of the Thunderbird and ran across Fleming Road.  After he saw the police arrive, Johnson came back to the scene and spoke

---

[1]The parties stipulated on the record that the top of the map is North, the bottom South, the right side East and the left side West.

3

with the police about the shooting.  Johnson then drove the Thunderbird home.  Some of the windows of the Thunderbird had been shattered and the vehicle had bullet holes in it.  Johnson testified that after that incident, he stayed out of the Woodhall Neighborhood.

On August 13, 2008, Johnson was in a mini-van with Fuller, and two of Fuller's friends, when Fuller was shot in the neck.  At the time of the shooting, the men were sitting in the vehicle, which was parked in the Selby Neighborhood.  Johnson, who was sitting in the driver's seat, then drove Fuller to Hurley Hospital.  Fuller survived. While at the hospital, Johnson spoke to the police about the incident and gave a statement to the police that same night.

Johnson testified that, with respect to the above incident, he did not believe that the Woodhall Gang had been targeting him.  Rather, he thought it was a random shooting wherein the Woodhall Gang "was just shooting up" the Selby Neighborhood.

Johnson testified that on the night of August 13, 2008, he received a telephone call from an unidentified individual who stated that the Woodhall Gang was going to kill everyone in the Selby Neighborhood.   Johnson testified that it was at this point that he first thought his life was in danger.

Johnson knew that Counts was a member of the Selby Hood Gang.   Johnson testified that while he is not a member of the Selby Hood Gang, he was close friends with Counts. Johnson was not with Counts when Counts was killed on October 6, 2008.   Nevertheless, Johnson received a second threatening telephone call from an unidentified caller on October 6, 2008, after Counts was killed.

Johnson received a third threatening telephone call on October 8, 2008, at which time the unidentified caller stated that Johnson was being watched and that he would be the next one

killed.

Johnson received a fourth threatening telephone call on October 9, 2008, when the unidentified caller stated that Johnson was going to be killed the next day (i.e., October 10, 2008), that Johnson was being watched, and that they knew his every move. Johnson did not receive any threatening telephone calls after October 9, 2008.

Johnson did not report any of the threatening telephone calls to the police prior to his arrest on October 10, 2008.

On October 10, 2008, Johnson was staying at his brother's residence, at Westgate Apartments on the South side of Flint. Johnson was staying at his brother's residence because he was afraid to go to his father's home on Birchcrest, in the Selby Neighborhood.

On October 10, 2008, Johnson woke up and drove to work in his vehicle, which at that time was a red Camaro. Johnson was working at "Genessee Cars" in Flint. At lunchtime, Johnson left work and drove to his father's house on Birchcrest, where Johnson retrieved a gun.[2]

After retrieving the gun, Johnson proceeded to drive to the Woodhall Neighborhood, to try to locate an individual named Trent, who was part of the Woodhall Gang. Johnson testified that he wanted to talk to Trent to try to diffuse the situation. Johnson testified that he knew that Trent was associated with the men who were trying to kill him. Armed with the gun under his driver's seat, Johnson found Trent on Kermit Street – which is in "Woodhall territory." Johnson and Trent spoke to each other briefly, while they remained seated in their respective vehicles. Johnson testified that Trent hold him that he would talk to the others and tell them to leave

---

[2]Johnson testified that he had obtained that gun well before October 8, 2008, when Counts had been killed.

Johnson alone.

Immediately after leaving Trent, Johnson wanted to get gasoline.  Johnson chose to stop at a gas station located at the intersection of Pierson and Fleming – on the borderline between the two rival neighborhoods.  Johnson testified that as he turned into the gas station, he saw a man he did not recognize running toward his vehicle.  The man was in all black and was wearing a hooded sweatshirt.  When the man began shooting at Johnson,  Johnson reached under his seat, retrieved his gun, and began returning fire.  Johnson fired seven shots at the man, while Johnson was driving the Camaro.

Johnson testified that he initially thought he had been shot.  Although Johnson's vehicle had been proceeding in the direction of Hurley Hospital at the time that Johnson was shot at, Johnson did not continue driving in that same direction.  Rather, Johnson made a U-turn and came right back in front of where the man had been shooting at Johnson.  Johnson testified that he made the U-turn so that he could go to his father's house on Birchcrest to call the police.  Thus, at that point Johnson was proceeding West on Pierson.

Johnson testified that he first noticed that a police car was following him after he had turned left on Cloverlawn from the intersection of Pierson and Cloverlawn.  Johnson saw that the police car's lights were activated.  Nevertheless, Johnson did not stop his vehicle and surrender the gun to the police when he saw the police.  Rather, Johnson proceeded driving South on Cloverlawn.  Johnson then made a left turn on to Roselawn Drive.  Johnson pulled into a driveway at 1921 Roselawn, a house that belonged to man Johnson knew.  Johnson did not stop his vehicle, but a boat hitch in the driveway caused it to come to a stop.  At that point, Johnson jumped out of the Camaro and fled on foot.  Johnson left the gun in the Camaro.  Johnson was

6

ultimately arrested behind a house on Cherrylawn, where Johnson was hiding underneath a porch.

Johnson testified that he fled from the police because he felt like his life would be over due to the fact that he had a gun in the Camaro with him.

Johnson also presented two other witnesses: 1) his father, Vernon Johnson; and 2) Cameron Henke, an investigator with the Federal Defender's Office. Those two witnesses testified that they had observed what they believed to be bullet holes in the Thunderbird and the Camaro.

## ANALYSIS

A.     Johnson's Request For Pretrial Rulings Regarding Evidence Of, And Jury Instructions Addressing, A Necessity Defense:

A defendant charged with being a felon-in-possession of a firearm may assert a necessity[3] defense. *United States v. Ridner*, 512 F.3d 846, 849 (6th Cir. 2008) (citing *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990)); *United States v. Johnson,* 416 F.3d 464, 468 (6th Cir. 2005). In essence, this defense allows a defendant to escape responsibility despite proof that his actions encompassed all of the elements of a criminal offense. *Ridner*, 512 F.3d at 849. This defense is limited to "rare situations" and is to be construed "very narrowly." *Id.*

The Sixth Circuit has held that a "trial judge does not 'invade' the province of the jury when determining, as a preliminary matter, whether a defendant has met the burden of

---

[3]Cases in this circuit often refer to the same or related defenses as "duress" and "justification," but apply the same *Singleton* five-factor test. *See, e.g., United States v. Kemp,* 546 F.3d 759, 765 (6th Cir. 2008) (applying *Singleton* factors to "justification defense"); *United States v. Johnson,* 416 F.3d 464, 468 (6th Cir. 2005) (applying *Singleton* factors to "duress defense").

introducing sufficient evidence on each of the elements" of the asserted defense. *Johnson,* 416

F.3d at 468.  The *Johnson* court explained that where an affirmative defense consists of several

elements and testimony supporting one element is insufficient to sustain it even if believed, the

trial court and jury need not be burdened with testimony supporting other elements of the

defense.  *Id*.  Thus, where the evidence is insufficient as a matter of law to support a necessity

defense, "a trial judge should exclude the evidence."  *Id*.

"When, as in this case, the issue is raised in a pretrial motion, the rule is to be applied just

the same: if the defendant's proffered evidence is legally insufficient to support a [necessity]

defense, the trial judge should not allow its presentation to the jury."  *Johnson,* 416 F.3d at 468.

"In *Singleton,* the Sixth Circuit adopted a five-factor test to determine when a defendant

is entitled to a jury instruction presenting the necessity defense," and emphasized that the

"keystone of the analysis is that the defendant must have no alternative either before or during

the event to avoid violating the law."  *Ridner*, 512 F.3d at 850.

"Instructions on the defense are proper if the defendant produces evidence upon which a

reasonable jury could conclude by a preponderance of the evidence that each of the following

five requirements is met:

> (1) that defendant was under an unlawful and present, imminent, and impending
> threat of such a nature as to induce a well-grounded apprehension of death or
> serious bodily injury;
>
> (2) that defendant had not recklessly or negligently placed himself in a situation
> in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that defendant had no reasonable, legal alternative to violating the law, a
> chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) that a direct causal relationship may be reasonably anticipated between the
> criminal action taken and the avoidance of the threatened harm; . . . and

8

(5) [that the defendant] did not maintain the illegal conduct any longer than absolutely necessary.

*Ridner,* 512 F.3d at 850.

"The defendant's initial burden in establishing these elements 'is not a heavy one, and is met even where there is weak supporting evidence' for the defense." *United States v. Kemp*, 546 F.3d 759, 765 (6th Cir. 2008). But a jury instruction on the defense should not be given if the defense lacks evidentiary support or is based upon mere suspicion or speculation. *Id.*

The Court concludes that, under Johnson's own version of the events,[4] Johnson has failed to meet his burden with respect to at least three of the *Singleton* factors.

Johnson cannot establish the second *Singleton* factor because Johnson's testimony demonstrates that he recklessly or negligently put himself in the situation at issue. Johnson's testimony establishes that he was well aware of the dispute between the rival neighborhoods. Johnson testified that on October 10, 2008, he was staying at his brother's apartment because he was afraid to stay at his father's house in the Selby Neighborhood. Johnson was also working outside of the Selby and Woodhall Neighborhoods. Thus, as of the morning of October 10, 2008, Johnson had removed himself from both the Selby and Woodhall Neighborhoods and he did not possess a firearm.

Later that day, however, Johnson went back into the Selby Neighborhood to retrieve a gun from his father's house and then knowingly entered the Woodhall Neighborhood. Thus,

---

[4]For purposes of this motion, the Court believes that it must accept Johnson's versions of the events and refrain from making credibility determinations. *See United States v. Paolello*, 951 F.2d 537, 543 (3d Cir. 1991) (Stating we must accept Defendant's "version of the facts in the record" and noting "even if we find [Defendant's] testimony unpersuasive, his credibility should be judged by the jury."); *United States v. Newcomb*, 6 F.3d 1129, 1138 (6th Cir. 1993); *Ridner*, 512 F.3d at 851-52

Johnson took himself from a safe environment (i.e., staying at his brother's apartment and/or work) and placed himself directly into the environment he knew to be dangerous.

Johnson's testimony establishes that he was aware that he would be in danger in the Woodhall Neighborhood. Indeed, Johnson had previously been shot at while in the Woodhall Neighborhood. Although Johnson was under no compulsion to go into the Woodhall Neighborhood, and had been told that he was being watched, he nevertheless chose to enter that neighborhood in order to speak to a known member of the Woodhall Gang. *United States v. Hargrove*, 416 F.3d 486, 489-91 (6th Cir. 2005); *see also United States v. Austin*, 133 Fed.Appx. 271, 274 (6th Cir. 2005) (defendant recklessly or negligently placed himself in a situation where it was probable that he would be forced to choose the criminal conduct by continuing to consort with dangerous gang members). Moreover, Johnson entered the Woodhall Neighborhood on October 10, 2008 -- despite having received a call stating that the Woodhall Gang was "watching his every move" and planned to kill him on October 10, 2008.

Accordingly, the Court concludes that Johnson has not met his burden with respect to the second *Singleton* factor.

The Court also concludes that Johnson has failed to meet his burden with respect to the third *Singleton* factor. The "keystone of the analysis is that the defendant must have *no alternative* – either before or during the event – to avoid violating the law." *Singleton*, 902 F.2d at 473 (emphasis added). The defense of necessity is not applicable when one has a choice of several courses of action, unless the defendant shows that he pursued his alternatives or such alternatives were foreclosed. *United States v. Hargrove*, 416 F.3d 486, 491 n.1 (6th Cir. 2005). Here, Johnson has offered no evidence to establish that he had no choice but to arm himself and

10

go in to the Woodhall Neighborhood on October 10, 2008.

While Johnson did not know the actual identity of the individuals who made the threatening telephone calls to him, Johnson believed the callers were associated with the Woodhall Gang. While Johnson had previously reported other shootings to the police, Johnson's testimony reflects that he told the police that he did not know the identity of the shooters. There is no testimony in the record that Johnson ever advised the police that he believed that the Woodhall Gang was behind any of the shootings. Notably, Johnson testified that he did not report any of the threatening telephone calls to the police prior to his arrest on October 10, 2008. Johnson could have worked "with the police to provide information about the gang so that they could resolve the problem." *Austin*, 133 Fed. Appx. at 274.

Johnson had other legal alternatives as well – including simply staying out of the Selby and Woodhall Neighborhoods. Indeed, Johnson himself appeared to recognize this as a viable alternative and began staying at his brother's apartment.

Accordingly, the Court concludes that Johnson has failed to meet his burden with respect to the third *Singleton* factor.

Finally, Johnson has not established that he did not maintain the illegal conduct any longer than absolutely necessary. Johnson testified that he first noticed that a police car was following him when he turned on to Cloverlawn from the intersection of Pierson and Cloverlawn. At that point, the police car's lights were activated and Johnson was away from the shooter. Nevertheless, Johnson did not stop his vehicle and surrender the gun to the police.

Moreover, Johnson testified that he fled from the police because he felt like his life would be over *due to the fact that he had a gun in the Camaro with him*. Thus, his testimony

11

establishes that he fled in order to avoid arrest – not to escape any physical harm.

Accordingly, Johnson cannot establish the fifth element because he maintained the illegal conduct (i.e., possession of the gun) longer than was absolutely necessary. *See, e.g., Ridner*, 512 F.3d at 851-52 (fifth element not met where defendant possessing ammunition ran from police officers in order to escape arrest.).

B.      Johnson's Remaining Requests For Pretrial Rulings:

Johnson's motion also asks the Court to rule upon two other issues that may arise at trial. First, he asks the Court rule as to whether the Government will be permitted to introduce evidence of the specifics of Johnson's prior convictions in the event he testifies, where he has stipulated, under *Old Chief v. United States*, 546 F.3d 759, 764 (6th Cir. 2009), to the fact that he is a convicted felon. Second, in the event that the Government intends to introduce into evidence Johnson's videotaped statement after his arrest, Johnson requests that the tape be redacted to excise prejudicial information, including evidence of gang activity, which would be unduly prejudicial under FED. R. EVID. 403.

As discussed with Counsel on February 2, 2010, the Court shall take these remaining issues under advisement. Should these issues arise at trial, the Court will address the issues at that time.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Johnson's Motion in Limine is DENIED with respect to his requests relating to a necessity defense. The Court concludes that Johnson has failed to establish a prima facie case of necessity pursuant to the five-factor *Singleton* test. Accordingly, the Court hereby RULES that Johnson is not entitled to jury

instructions on the defense of necessity.  IT IS FURTHER ORDERED that Johnson is precluded

from introducing testimony or evidence at trial relating to a necessity defense.

The remaining requests in Johnson's Motion are TAKEN UNDER ADVISEMENT.  If

necessary, the Court shall address those remaining evidentiary issues at trial.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 4, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
February 4, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager